ANNIE HARNICKELL, as Administratrix, etc., Respondent,
    *v.* THE PARROT SILVER AND COPPER COMPANY, Appellant.

*Court of Appeals, November* 26, 1889.

Reversing 52 Hun, 610.

*Brokers. . Commissions.*—A person, who has acted as agent for the vendee in negotiating a contract and has advised him how to obtain the property at the lowest possible price, is not, in the absence of any agreement to that effect, the agent of the vendor, and cannot recover commissions from him.

Appeal from the general term of the supreme court, affirming judgment entered upon a verdict.

*Ira D. Warren*, for appellant.

*John M. Bowers*, for respondent.

FINCH, J.—We are unable to find in the record any proof of an employment of the intestate by the defendant company to negotiate a contract of sale.    The argument for the plaintiff put the facts in every possible connection and array to lead to such an inference, but left us with the conviction that it could not justly be drawn.    A detailed discussion of the proofs is not within our present purpose, but it is due to the parties and their counsel that we indicate in some general way the view we take of the evidence.

The contract of May 30th between the defendant company and Pope, Cole & Co. was both negotiated and drawn by Harnickell.    It provides for the smelting of the ore and the purchase of the copper by the latter firm.    That Harnickell was their agent in the procuring of that contract so far as it relates to the smelting of the ore, and was paid by them for his services in that respect is conceded, but it is claimed that for his services in procuring the sale he has not been paid, and was employed by the defendant for that purpose.    The evidence not only shows no contract of employment, but establishes inferentially the exact contrary. The defendant company never offered or proposed to make more than a single contract, and that was for the sale of their product to some one who would smelt and refine it and pay according to results, and just that one contract is all that was ever made.

Wallace represented the company.    At first he wrote directly to Pope, Cole & Co. stating his wish to dispose of the mine product to them.    The latter answered by referring him to Harnickell as a man who knew their ways and methods.    They were in daily correspondence with him and through him had completed hundreds of transactions. In accordance with the suggestion Wallace sent for Harnickell and made his proposition to him.    Assume even that the latter's authority was only to make a contract for smelting the ore, and yet his position was entirely plain. It was obvious that he could not make a smelting contract

and earn his commission from his employers for that unless he induced them also to buy the refined product, which was made an essential condition. Whatever he did in that respect was in his own interest and for his own benefit, and accounts for all his action in negotiating the contract. Not the slightest inference of an employment by the defendant is justified by his conduct. On the contrary, his direct and palpable interest was against the vendors in the sale. His principals did not desire to buy; they could not smelt if they did not buy; and to earn commissions for a smelting contract Harnickell was compelled to induce his principals to purchase. And how? Obviously he must make it for their interest to buy. He must screw the vendor's price down to the lowest possible point, and show them how such desirable result could be reached. That he proceeded to do. It is only necessary to read his letters to Pope, Cole & Co. of the 10th and 11th of May to understand his position. He tells them, what was the truth from the first moment, that "the matter is to be sold as well as smelted," he intimates that Wallace & Sons as a firm would in the end buy the copper of Pope, Cole & Co., and adds, "You would thus make and buy at *your price*—furnishing thus a very easy market and no risk to you;" he suggests, "You can easily name a price which shall not be *uninviting* and shall include your expenses for re-sale, freight, etc., *unless that be unwise for comparisons:*" he repeats "as said before, purchase on your part involves delivery at Baltimore of ingot and that unfavorable discriminating feature against Baltimore *must be covered* either in the toll or *in the deduction* from lake copper if that be the mode of settling price, and in such a way that when Wallace takes it off your hands you will be at no disadvantage;" and what is most significant of all, when he comes to speak of the persons to be referred to for the purpose of fixing the price, he says, "Hungerford is a good man to refer to as one party. Hendricks always too high. * * * Simpkins is incorrect; * * * always too high."

In other words, the man who now claims to have acted for the vendors is found advising the vendees how to get the property for the lowest possible price. It strikes us as beyond reasonable question that there never was any employment by defendants, and that Harnickell negotiated the sale as a necessary condition of earning commissions upon the smelting part of the agreement, and so far as he acted beyond his own interest, acted wholly for and in behalf of the vendees, and with care only for their profit.

The judgment should be reversed and a new trial granted, costs to abide event.

All concur.